FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 05, 2016

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LAURIE PETERSON,

                    Plaintiff,

v.

KELLY SERVICES, INC.,

                    Defendant.

No.    2:15-CV-0074-SMJ

**ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFF'S MOTION IN LIMINE**

Before the Court are Plaintiff Laurie Peterson's Motion for Partial Summary Judgment, ECF No. 26, Defendant Kelly Services Incorporated's Motion for Summary Judgment, ECF No. 34, and Peterson's Motion in Limine, ECF No. 62. The Court heard oral argument on all motions during a hearing held on September 12, 2016. ECF No. 88. Having reviewed the pleadings and the file in this matter, and considered counsels' arguments at the hearing, the Court is fully informed and, for the reasons detailed below: (1) denies Plaintiff's Motion for Summary Judgment; (2) grants, in part, and denies, in part, Defendant's Motion for Summary

Judgment, and (3) grants, in part, and denies, in part, Plaintiff's Motion in Limine. The following confirms and supplements the Court's oral rulings.

I.     BACKGROUND

Plaintiff Laurie Peterson ("Peterson") began working for Kelly Services, Inc. ("Kelly Services") in June 2012 as a staffing supervisor in Spokane, Washington. ECF No. 27 at 2; ECF No. 35 at 1. Kelly Services is a staffing agency that provides temporary and permanent employees to its customers. ECF NO. 27 at 2. Peterson's duties included recruiting and interviewing candidates for positions with Kelly Service's customers and recruiting new customers. ECF No. 27 at 2; ECF No. 35 at 2. Peterson received positive performance reviews during her first year working for Kelly Services. ECF No. 27 at 2-3.

In November 2013, Kelly Services hired Teresa Bruce ("Bruce") as district manager for the Spokane Office. ECF No. 27 at 3. Bruce became Peterson's direct supervisor. ECF NO. 27 at 3. District managers at Kelly Services have the authority to set staffing supervisors' pay rates and determine their work location and schedules. ECF No. 27 at 3; ECF No. 35 at 2; ECF No. 35-6 at 13-15.

Peterson suffers from celiac disease, a digestive and autoimmune disorder that may cause digestive problems, fatigue, and anemia in response to gluten. ECF No 27 at 1. It is unclear from the record when Peterson was diagnosed with celiac disease. Stress exacerbates Peterson's symptoms. ECF No. 27 at 2.

Peterson alleges that Bruce learned Peterson had celiac disease on Bruce's first day as district manager. ECF No 27 at 4. Kelly Services disputes this. Regional manager Eli Rodriguez ("Rodriguez"), who was at the Spokane office during most of Bruce's first week, recalled Peterson saying she could not eat at certain restaurants because she was "gluten free," but that she never mentioned celiac. ECF No. 35 at 10. Peterson alleges that Bruce mocked Peterson's condition as Bruce ate a piece of cake and also questioned Peterson about her medical expenses and the costs of her medical insurance coverage. ECF No. 27 at 4.

Peterson perceived that Bruce treated her differently than other employees on account of her condition. ECF No. 27 at 4. Specifically, Peterson interpreted several actions taken by Bruce as harassment or discrimination linked to Peterson's celiac disease: (1) Bruce complained to Kelly Service's Human Resources ("HR") department and Rodriguez about Peterson; (2) Bruce moved Peterson's work space from an office to a cubicle; (3) Bruce changed Peterson's work schedule to require her to come in before 8:00 a.m. and attend meetings from 5:00 p.m. to 6:00 p.m.; (4) Bruce refused to allow Peterson to go to the bathroom during meetings; and (5) Bruce told Peterson to work through lunch. ECF NO. 27 at 4-5.

Rodriguez also received numerous complaints about Peterson from Bruce, including about her productivity, performance, ability to follow direction, and documentation of Peterson's work. ECF No. 35 at 10-11. Rodriguez acknowledged

that Bruce wanted Peterson fired. ECF No. 27 at 5-6; ECF No. 35 at 11. But there is no indication that Rodriguez believed Bruce wanted Peterson fired because of her celiac disease.

On December 16, 2013, Peterson emailed Adrienne Rubel ("Rubel"), an HR manager at Kelly Services, claiming that Bruce was harassing her, and that she believed Bruce was making false allegations against her in an attempt to have her terminated. ECF No. 27 at 6. In this email, Peterson did not indicate that she believed she was being discriminated against by Bruce because of her celiac disease. *Id.*

Peterson then emailed Rubel and Rodriguez on December 19, 2013, following up on her December 16 email. ECF No. 27 at 7. This time she notified Rubel that Bruce was forcing her to arrive at work before 8:00 a.m., stay after 5:00 p.m. and to work through lunch. ECF No. 27 at 7. Peterson stated her belief that these measures were implemented in an attempt to force her to quit. ECF No. 27 at 7. Rodriguez questioned Bruce about these new scheduling policies, and indicated to Bruce that they were not necessary. ECF No. 35 at 13.

Rubel and Rodriguez discussed Peterson's complaint with Bruce, and instructed Bruce to "start documenting everything Ms. Peterson did and demand documentation." ECF No. 27 at 7. Rubel coached Bruce on how to interact with Peterson. ECF No. 27 at 7-8. By late December, Rubel was involved in daily

conversations and communications with Bruce and Peterson to try to resolve this situation. ECF No. 35 at 14. The working relationship between Bruce and Peterson continued to deteriorate. ECF NO. 27 at 8.

On January 14, 2014, Peterson requested accommodation for the first time. ECF No. 35 at 3. She requested to limit her schedule to 8:00 a.m. to 5:00 p.m. as an accommodation for her celiac disease. ECF No. 27 at 8; ECF No. 35 at 4. In response to this request, Bruce suggested that Peterson take Family and Medical Leave Act ("FMLA") leave, if necessary. ECF No. 27 at 9. Following her conversation with Bruce, Peterson contacted Rubel and told her that Bruce was pressuring her to quit and told her to take FMLA leave rather than asking for a schedule accommodation. ECF No. 27 at 9. Rubel then provided Peterson a questionnaire to have her physician complete in connection with her accommodation request, which she was to return by January 20, 2014. ECF No. 27 at 9.

The record indicates that Peterson did not receive any treatment for celiac disease during the time period relevant to this case. ECF No. 35 at 4.

Rodriguez testified that Kelly Services planned to provide whatever accommodation was needed based on Peterson's doctor's recommendation, and that altering her shift hours would not have been a problem. ECF No. 35 at 14-15. But

he did not have any conversation with Peterson about an accommodation. ECF No. 35 at 14.

On January 15, 2014, Rodriguez and Rubel participated in a conference call with Peterson and Bruce to discuss the ongoing conflict between the two. ECF No. 27 at 9. The call was scheduled prior to Peterson's accommodation request on January 14. ECF No. 35 at 15. The call only lasted about thirty-five seconds. ECF No. 35 at 15. Rodriguez stopped the call after Peterson and Bruce began talking over each other, yelling, and calling each other liars. ECF No. 27 at 10; ECF No. 35 at 15. Following the call, Bruce called Rodriguez. ECF No. 35 at 15. Rodriguez also ended this call after Bruce started yelling at him. ECF NO. 35 at 15.

Following these calls, Rodriguez decided to terminate both Peterson and Bruce. ECF No. 35 at 16. He confirmed the terminations with his superior the following day. ECF No. 35 at 16. Both employees were formally terminated on January 20, 2014. ECF No. 35 at 17.

Defendant maintains that Peterson was terminated because she acted "unprofessionally.' ECF No. 27 at 10. In a letter sent on April 14, 2014, Kelly Services identified a number of factors justifying Peterson's termination: "Not following manager's directions regarding following the appropriate channels when she has concerns"; "failure to complete tasks in a timely manner"; failing to train a coworker; "continued inability to work cohesively as a team member"; and

"unprofessional verbal and e-mail correspondence." ECF No. 27 at 10. Rodriguez asserts that he followed Kelly Services' procedures in terminating Peterson. ECF No. 35 at 9-10.

## II.   PROCEDURAL BACKGROUND

Peterson wrote a letter to the U.S. Equal Employment Opportunity Commission ("EEOC") on July 7, 2014, initiating a complaint. ECF No. 42-1. However, a charge was not filed with the EEOC until November 1, 2014. ECF No. 35 at 9. A few months later, Peterson filed this complaint on March 24, 2015, alleging failure to accommodate, discrimination, and retaliation under the Americans with Disabilities Act ("ADA") and the Washington Law Against Discrimination ("WLAD"). ECF No. 1. Kelly Services answered on May 6, 2015. ECF No. 4. Peterson filed her Motion for Partial Summary Judgment on May 11, 2016. ECF No. 26. Six days later, Kelly Services filed its Motion for Summary Judgment. ECF No. 34. On June 24, 2016, Peterson also filed a Motion in Limine on several evidentiary issues. ECF No. 62. At about the same time, both parties submitted witness and exhibit lists, objections to these filings, and corresponding responses. *See, e.g.*, ECF Nos. 50, 51, 52, 53, 54, 61, 64, 65, 68, 69, 72. Responses and replies to the Motion in Limine were also filed. ECF Nos. 76, 83.

### III.    MOTIONS FOR SUMMARY JUDGMENT

####     A.        Summary Judgment Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citation omitted). When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**B.      Peterson's Motion for Partial Summary Judgement**

Plaintiff argues that she is entitled to summary judgment on her ADA and WLAD retaliation claims. ECF No. 26.

### 1.  Defendant's Administrative Exhaustion Argument Fails and the Court Can Properly Exert Jurisdiction

As a threshold matter, Kelly Services argues that the Court lacks jurisdiction over Peterson's retaliation claim under the ADA because she failed to exhaust her administrative remedies. ECF No. 39 at 8-9. As the parties agreed during the September 12, 2016 motions hearing, this administrative exhaustion argument pertains only to the ADA retaliation claim, not the WLAD claim, since it is not a requirement for the latter. *See* David K. DeWolf & Keller W. Allen, *Wash. Prac., Tort Law and Prac.* § 25:1 (4th ed. 2016).

The Court can exercise jurisdiction to review only allegations within the ambit of a plaintiff's EEOC charge. *See* 42 U.S.C. § 12203; *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002). While Peterson failed to check the box for retaliation on her EEOC charge, she made allegations of retaliation in the materials she initially submitted to the EEOC. ECF Nos. 42, 42-1, and 42-2. Even if she had not, the Court would possess jurisdiction to consider "charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations." *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir 2003). Here, Peterson's retaliation claim was reasonably related to her discrimination

charges and was within the scope of the EEOC investigation. Therefore, this Court has subject matter jurisdiction over her retaliation claim.

### 2. Peterson's Retaliation Claim

The ADA's retaliation provision provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Similarly, the WLAD includes a provision providing that: "It is an unfair practice for any employer, employment agency, labor union, or other person to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter." Wash. Rev. Code § 49.60.210(1).

A retaliation claim under the ADA requires a plaintiff to show "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000); *see also Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir. 2003). The requirements for a claim of retaliation under the WLAD are similar: "To establish a prima facie case for retaliation, a plaintiff must show that (1) he or she engaged in statutorily protected activity, (2) an adverse employment action was

taken, and (3) there is a causal link between the employee's activity and the employer's adverse action." *Tyner v. State*, 154 P.3d 920, 928 (Wash. Ct. App. 2000) (internal citations and quotations omitted). "An actionable adverse employment action must involve a change in employment conditions that is more than an 'inconvenience or alteration of job responsibilities,' such as reducing an employee's workload and pay." *Id.*, 154 P.3d at 929 (internal citations omitted).

A plaintiff who lacks direct evidence of retaliation may use the *McDonnell Douglas* burden shifting analysis, which applies to both ADA and WLAD retaliation claims. *See, e.g., Morgan v. Napolitano*, 988 F.Supp.2d 1162, 1176 (E.D. Cal. Dec. 19, 2013); *see also Brown*, 336 F.3d at 1186–87; *Tyner*, 154 P.3d at 928– 29. Accordingly, once a plaintiff has made a prima facie showing of retaliation, the burden shifts to the employer to present legitimate reasons for the adverse action. *Brooks*, 229 F.3d at 928. If the employer meets that burden, the burden shifts back to the employee to demonstrate a genuine issue of material fact regarding whether the employer's reasons were pretext. *Id*.

Peterson argues that the undisputed facts in this case demonstrate that (1) Peterson engaged in protected activity under the ADA and WLAD by requesting reasonable accommodation and complaining of illegal harassment; (2) Kelly Services fired Peterson shortly after she requested accommodation and filed her complaints; and (3) Kelly Services decided to terminate Peterson because of her

accommodation request and complaints about discrimination. ECF No. 26 at 9. She also argues that direct evidence exists, rendering the *McDonnell Douglas* test inapplicable. ECF No. 46 at 3-5.

It is clear from the record that Peterson engaged in a protected activity by requesting a schedule accommodation on January 14, 2014. ECF No. 26 at 12. Kelly Services disputes, however, whether Peterson engaged in protected activity before then. Based on this record, there is at least a material issue of fact concerning whether any of Peterson's prior complaints about Bruce constituted protected activity. It is not clear that she asserted prior to January 14, 2014, that Bruce was discriminating against her based on a disability.

It is also clear that Peterson suffered an adverse employment action when she was terminated. The schedule change and other directives from Bruce may also constitute adverse employment actions, but because these actions were not connected to the January 14, 2014 request for accommodation, there is no need to decide that question for purposes of Peterson's Motion for Partial Summary Judgment. The relevant question here is whether there is a causal connection between Peterson's request for accommodation and her termination.

"Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between

the protected action and the retaliatory employment decision." *Yarzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (citation omitted). "Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases." *Bell v. Clackamas Cnty.*, 341 F.3d 858, 865-66 (9th Cir. 2003). Under the WLAD, an employee need only show that the protected activity was a "substantial factor" in the adverse employment action. *Sambasivan v. Kadlec Med. Ctr.*, 338 P.3d 860, 872 (Wash. Ct. App. 2014).

Peterson argues that the temporal proximity between her complaints, accommodation request, and termination combined with evidence that she had no work-performance issues prior to Kelly Services hiring Bruce as her supervisor, are sufficient to establish causation. ECF No. 26 at 17-19.

The temporal proximity between Peterson's request for accommodation and her termination is enough to state a prima facie case. However, Defendant has articulated legitimate, nondiscriminatory reasons for terminating Peterson. Namely, her alleged unprofessional conduct in handling conflict with Bruce. ECF No. 39 at 18-19. Importantly, the conference call Rodriguez arranged with Bruce and Peterson on January 15, 2014, was scheduled before Peterson requested accommodation. It was only after this call, which devolved into a shouting match between Bruce and Peterson, that Rodriguez decided to fire both employees.

Peterson maintains that Kelly Services' reasons for firing her are pretext and that direct evidence exists showing that Defendant took adverse actions against her because she engaged in protected activity. ECF No. 41 at 13-14; ECF No. 46 at 3. The Court is unpersuaded. Rodriguez stated that he terminated Peterson not because she complained about Bruce, or engaged in other protected activity, but because of the unprofessional manner of her complaints. To the extent Peterson argues that Bruce's testimony is undisputed and provides direct evidence, the Court is also not persuaded. As Defendant argued during the motions hearing, the record rebuts Bruce's testimony, and issues of fact remain as to why Bruce took certain actions against Peterson. Moreover, it is clear from the record that the animosity between Peterson and Bruce was extreme, that neither of them handled the conflict appropriately, and that Kelly Services had ample nondiscriminatory reasons to terminate them both. Plaintiff's Motion for Partial Summary Judgment is therefore denied.

## C.   Kelly Services' Motion for Summary Judgment

### 1.  Disability Discrimination

To state a prima facie claim of disability discrimination, a plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) she is qualified for her position; and (3) that she was discriminated against because of her disability. *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). The WLAD includes a

functionally identical claim: "A prima facie case of disparate treatment requires the plaintiff to show that [s]he (1) is in a protected class (disabled), (2) suffered an adverse employment action, (3) was doing satisfactory work, and (4) was treated differently than someone not in the protected class." *Kirby v. City of Tacoma*, 98 P.3d 827, 834 (Wash. Ct. App. 2004) (citation omitted). The *McDonnell Douglas* burden shifting analysis applies to these claims as well. *See Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1175; *Scrivener v. Clark Coll.*, 334 P.3d 541, 544 (Wash. 2014).

Kelly Services argues that Peterson has not established that she had a disability because she has not shown that her celiac disease substantially limited her ability to work or why it would prevent her from starting her schedule ten minutes early. ECF No. 34 at 9-10. But the law does not require Plaintiff to show that she cannot work in order to establish that she has a disability. Under EEOC regulations "[a]n impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). Under Washington Law, "Disability means the presence of a sensory, mental, or physical impairment that (i) is medically recognized or diagnosable; or (ii) exists as a record or history; or (iii)

is perceived to exist whether or not it exists in fact." Wash. Rev. Code § 49.60.040(7)(a). Peterson alleges that her condition impacts her ability to perform major life activities, including eating, and can cause her to need more frequent bathroom breaks and causes fatigue. ECF No. 41 at 16-17. As such, a genuine issue of material fact concerning whether Peterson was disabled under the ADA or WLAD exists.

However, Peterson cannot show that she was terminated because of her disability. *See* Section III.B.2, *supra*. Peterson has not shown that Kelly Services' basis for terminating her was pretext for discrimination or retaliation. *Id.*

Peterson also alleges that Bruce discriminated against her by harassing and mocking her and by imposing a schedule change. Kelly Services asserts that these allegations are unfounded. ECF No. 34 at 10. At this stage, Plaintiff has presented enough evidence to create an issue of material fact concerning whether Bruce's actions constituted unlawful discrimination. A question of fact remains as to whether Bruce's actions towards Peterson were motivated by Peterson's celiac disease.

As such, the Court grants Kelly Services' Motion for Summary Judgment on Peterson's disability discrimination claims with respect to her termination, but denies the Motion with respect to Bruce's alleged adverse actions.

### 2. Failure to Accommodate

Under the ADA, a prima facie claim of failure to accommodate claim requires a plaintiff to show that: (1) she is disabled within the meaning of the ADA; (2) she is qualified and able to perform the essential functions of the job with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012). Under the WLAD, a plaintiff must show that: (1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality. *Davis v. Microsoft Corp.*, 149 Wash.2d 521, 532 (2003).

For the reasons discussed in the previous section, a question remains as to whether or not Peterson is disabled. It is not disputed that she was qualified for and could perform her job. Peterson's claim fails, however, because she was terminated less than a week after her request for accommodation for reasons unrelated to that request. Kelly Services took the proper first step in responding to Peterson's request, by giving her a form to take to her doctor for medical verification. There is

no way to know, however, whether Kelly Services would or would not have properly engaged in the interactive process and, if appropriate, accommodated Peterson's condition, since Peterson's employment ended shortly after receiving the form. This question, though, is ultimately irrelevant because Peterson's employment ended before Kelly Services could take any further steps regarding accommodation. Accordingly, the Court grants Defendant's Motion for Summary Judgment with respect to Peterson's failure to accommodate claims.

### 3. Retaliation

The controlling law concerning Peterson's retaliation claim is discussed in Section III.B.2, *supra*. As discussed, Peterson has not demonstrated that Kelly Services' asserted nondiscriminatory basis for terminating her was pretext for retaliation. However, Peterson has also raised issues of fact concerning whether Bruce took impermissible retaliatory action against Peterson before she was terminated. For the reasons discussed in relation to Peterson's discrimination claims, this portion of her retaliation claims survives summary judgment. Accordingly, the Court grants Kelly Services' Motion for Summary Judgment on Peterson's retaliation claim with respect to her termination, but denies the motion with respect to her allegations regarding Bruce's actions before Peterson's termination.

## IV.   PLAINTIFF'S MOTION IN LIMINE

Plaintiff also filed a Motion in Limine making sixteen separate requests. During the motions hearing, however, Plaintiff's counsel indicated that only four issues were contested. At the same hearing, the parties agreed to table the non-contested issues, pending this Court's Order on the parties' Motions for Summary Judgment, which would help the parties determine what evidentiary issues remain.

The Court made the following rulings during the hearing on September 12, 2016, related to the Motion in Limine: (1) granted the motion to exclude evidence regarding Plaintiff's work performance on the Guardian Life Insurance Account; (2) witness Stacy Ralph will be permitted testify; (3) the email from Stacy Ralph that Kelly Services did not disclose to Plaintiff until June 17, 2016, is excluded from evidence; and (4) denied the motion to exclude records pertaining to Plaintiff's employment with Sears Holding Company.

The Court further orders the parties—to the extent additional evidentiary issues pertaining to the present Motion in Limine remain following this Order—to alert the Court of any such issues by **October 12, 2016, at 3 p.m.** Moreover, the October 7, 2016, deadline at ECF No. 81 regarding the filing of trial briefs, jury instructions, verdict forms, requested voir dire, and lists of exhibits admitted without objection shall be extended and the parties shall file and email these documents to the Court by no later than **October 12, 2016, at 3 p.m.**

## V.    CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Partial Summary Judgment, **ECF No. 26**, is **DENIED**.

2.    Defendant's Motion for Summary Judgment, **ECF No. 34**, regarding Plaintiff's:

   A.    Disability discrimination claims with respect to Plaintiff's termination is **GRANTED**.

   B.    Disability discrimination claims with respect to Bruce's alleged adverse actions is **DENIED**.

   C.    Retaliation claim with respect to Plaintiff's termination is **GRANTED**.

   D.    Retaliation claim with respect to Plaintiff's allegations regarding Bruce's actions before Plaintiff's termination is **DENIED**.

   E.    Failure to accommodate claims is **GRANTED**.

3.    Plaintiff's Motion in Limine, **ECF No. 62**, as to:

   A.    The motion to exclude evidence regarding Plaintiff's work performance on the Guardian Life Insurance Account is **GRANTED**;

**B.**     The motion to prevent witness Stacy Ralph from testifying is **DENIED**;

**C.**     The motion to exclude from evidence an email from Stacy Ralph that Kelly Services did not disclose to Plaintiff until June 17, 2016 is **GRANTED**; and

**D.**     The motion to exclude records pertaining to Plaintiff's employment with Sears Holding Company is **DENIED**.

**4.**     The parties shall alert the Court as to any remaining evidentiary issues related to the Motion in Limine, **ECF No. 62**, by no later than **October 12, 2016, at 3 p.m.**

**5.**     The parties shall file with and email to the Court trial briefs, jury instructions, verdict forms, requested voir dire, and lists of exhibits admitted without objection by no later than **October 12, 2016, at 3 p.m.**

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 5th day of October 2016.

SALVADOR MENDOZA, JR.
United States District Judge

ORDER **-** 21